IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LYNDA WILSON                                                                                    PLAINTIFF

V.                              CASE NO.: 1:15-CV-129-BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                          DEFENDANT

# MEMORANDUM OPINION AND ORDER

Plaintiff Lynda Wilson has appealed the final decision of the Commissioner of the Social Security Administration denying her claims for supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

**Background**

Ms. Wilson alleged she became limited in her ability to work due to bipolar disorder, osteoarthritis, a heart murmur, migraines, hepatitis C, and a growth on her kidney.  (SSA record at 538)  After conducting a hearing, the Administrative Law Judge ("ALJ") concluded that Ms. Wilson had not been under a disability within the meaning of the Social Security Act at any time from January 17, 2013, the date the application was filed, through October 20, 2014, the date of his decision.  (*Id*. at 400)  On November 17, 2015, the Appeals Council denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (*Id*. at 1-5)  Ms. Wilson then filed her complaint initiating this appeal.  (Docket #2)

Ms. Wilson was forty-seven years old at the time of the hearing and lived with her boyfriend and boyfriend's adult daughter.  (*Id*. at 413-14)  She had her General Education Development certificate.  (*Id*. at 414)  Ms. Wilson had not worked since 2005.  (SSA record at 415)

**The ALJ's Decision**

The ALJ found that Ms. Wilson had not engaged in substantial gainful activity since her alleged onset date and that her mild osteoarthritis of the bilateral knees, mild obesity, migraine headaches, chronic obstructive pulmonary disease, and a renal mass on her right kidney and small cyst on her left kidney were "severe" impairments.  (*Id*. at 393)  She did not, however, have an impairment or combination of impairments that met or

equaled a Listing. (*Id.* at 395-96) He judged that Ms. Wilson's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (*Id*. at 396-98)

Based on his findings, the ALJ concluded that, during the relevant time period, Ms. Wilson retained the residual functional capacity ("RFC") for light work, except she should not work around temperature extremes or heavy fumes and, due to her lack of work history and General Education Development, was limited to "unskilled, rote activities." (*Id*. at 396) After hearing testimony from a vocational expert, the ALJ determined that Ms. Wilson could perform work as a hotel housekeeper and fast food worker. (*Id*. at 400) Thus, the ALJ concluded, Ms. Wilson was not disabled. (*Id*. at 400)

**Ms. Wilson's Allegations**

Ms. Wilson claims the ALJ committed error by finding that her bipolar disorder was not a severe impairment. She also claims that the ALJ's finding that she could perform light, unskilled work where she was not exposed to temperature extremes or heavy fumes is not supported by the evidence. (#11 at 26-30)

**Reasons for Remand**

The regulations define a "severe" impairment as one that significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §416.920(c). At step two of the five-step analysis, the ALJ assessed whether Ms. Wilson's alleged impairments were severe. He concluded that her mild osteoarthritis of the bilateral knees, mild

obesity, migraine headaches, chronic obstructive pulmonary disease, and a renal mass on her right kidney and small cyst on her left kidney were "severe" impairments, but that her bipolar disorder was not. (SSA record at 393-95) In support of his conclusion, he stated that he gave "great weight" to the opinion of Ken Coon, M.D., who performed a consultative examination of Ms. Wilson for the Commissioner. (*Id*. at 394) But the ALJ's conclusion contradicts Dr. Coon's opinion.

Dr. Coon described Ms. Wilson's affect and mood as normal. (*Id*. at 729) He said she was cooperative, but restrained and laid-back. She reported having violent thoughts toward her boyfriend's "ex" and said that she had suicidal ideation without concrete planning. (*Id*. at 730) Her attention and focus were adequate, but she presented a limited memory and recall of details. (*Id*.)

He concluded that Ms. Wilson had experienced at least one major depressive episode and one manic episode; experienced depression and anxiety daily; had panic attacks when around crowds of people; and did not like to be around people other than close family. (*Id*. at 731) Dr. Coon diagnosed bipolar disorder and assessed a GAF score of 50-60. He found that Ms. Wilson was not limited in day-to-day adaptive functioning. He found she had the capacity to communicate and interact in a socially adequate manner and could communicate and interact effectively with one or two familiar people. (*Id*. at 732) But, Dr. Coon went on to find that Ms. Wilson was limited in her capacity to cope with the typical mental/cognitive demands of basic work-like tasks because she had

trouble following instructions, dealing with authority, and was subject to impulsive behavior and quick anger. (*Id.*) He also found she was limited in her ability to attend and sustain concentration on basic tasks; sustain persistence in completing tasks; and complete work-like tasks. (*Id.*)

The ALJ did not explain why he gave Dr. Coon's opinion "great weight," yet rejected the portion of his opinion dealing with Ms. Wilson's limitations in her ability to do basic work-like tasks. The ALJ mentioned that Dr. Coon noted "slight signs of exaggeration or malingering" during his examination of Ms. Wilson. But Dr. Coon explained in his opinion that when he thought she was "groping for what she felt was the 'right'" answer, he asked one or two more questions to get a more clear response. (*Id*) Dr. Coon did not specify which responses he found to be "slightly" exaggerated and did not perform any objective test to detect malingering. Dr. Coon's note of a "slight" sign of exaggeration during an unspecified portion of the test is not a sufficient basis for the ALJ to reject only the findings related to Ms. Wilson's limitations.

In her brief, the Commissioner points to treating source records that, she argues, support the ALJ's determination that Ms. Wilson did not have any functional limitation due to her bipolar disorder.[2] (#12 at 5) The Commissioner is correct that these records indicate instances where Ms. Wilson's general practitioner and cardiologist found that she

---

[2] Four of the seven treatment notes referenced were from before the relevant time period. (SSA record at 671, 686, 694, 697)

did not have memory loss and that her mood, affect, insight and judgment were normal. Upon closer review, however, the treatment notes also indicate that Ms. Wilson was consistently diagnosed with and treated for bipolar disorder and, on three occasions including two from the relevant time period, was found to be positive for depression, insomnia and anxiety.  (SSA record at 671, 686, 694, 697, 790, 837, 890)

The records the Commissioner points to also reveal that Ms. Wilson's medication was not controlling her bipolar disorder.  At a visit to Virginia Hartness, APN, in October, 2012, Ms. Wilson complained of difficulty dealing with her bipolar disorder and reduced effectiveness of her Seroquel.  (*Id*. at 685)  Ms. Hartness assessed bipolar disorder with depression and insomnia, increased her Seroquel and prescribed Gabapentin.  (*Id*. at 686)

During a visit to UAMS on October 15, 2013, David L Rutlen, M.D., assessed Ms. Wilson as positive for depression but negative for memory loss.  (*Id*. at 790)  At an April, 2014 visit with Terry Burns, M.D., Ms. Wilson reported that she was having major mood swings and felt like her Seroquel was not helping.  (*Id*. at 835)  Dr. Burns increased her Seroquel; prescribed Klonopin and Paxil; and recommended counseling for anger management.  (*Id*. 837)  On September 3, 1014, Ms. Miller was again seen by Dr. Burns, who assessed anxiety and prescribed Klonopin, Paxil, and Seroquel.  (*Id*. at 890-91)  As a whole, Ms. Wilson's treatment records support Dr. Coon's findings of limitation in Ms. Wilson's ability to work.

Ms. Wilson's testimony also supports a finding of limitation due to her bipolar disorder. At the hearing, Ms. Wilson testified that she stopped working due to her bipolar disorder, which prevented her from being around many people. (*Id*. at 415-17)  She stated that she could not concentrate or handle being around people and had stopped taking care of her grandchildren because of her limitations. (*Id*. at 418-19)  Following the hearing, Ms. Wilson submitted a letter indicating that she has difficulty talking to people and remembering events. (*Id.* at 608-611)

In sum, there is not substantial evidence to support the ALJ's determination that Ms. Wilson's bipolar disorder did not cause a limitation in her ability to do basic work activity.

Here, because the ALJ found that Ms. Wilson had other severe impairments, he went on to assess Ms. Wilson's residual functional capacity ("RFC").  In assessing Ms. Wilson's RFC, the ALJ was required to consider limitations from all of her impairments, both severe and non-severe.  20 C.F.R. §§ 416.920(e) and 416.945; SSR 96-8p.  As set forth above, however, here the ALJ did not discuss Ms. Wilson's impairment of bipolar disorder when assessing her RFC.  Further, he did not discuss Dr. Coon's findings that she was limited in her ability to cope with the typical mental/cognitive demands of basic work-like tasks; her ability to deal with authority and control her anger; her ability to attend and sustain concentration on basic tasks; and her ability to sustain persistence in completing tasks.

The ALJ found that Ms. Wilson was limited to *unskilled* work, but he did so based on a "lack of work history and a General Education Development education," not to account for any of the limitations found by Dr. Coon. The ALJ's failure to consider her impairment of bipolar disorder, even if characterized as not severe, in assessing Ms. Wilson's RFC was error.[3]

**Conclusion**

After considering the record as a whole, the Court concludes the ALJ's finding that Ms. Wilson had no limitations in her ability to perform basic work activity resulting from her bipolar disorder was error. The decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and remanded for action consistent with the opinion. The is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 2nd day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3]The Court has considered whether, under the circumstances of this case, the ALJ's error was harmless. Here, the ALJ asked a second hypothetical to the vocational expert adding limitations for superficial contact with the public and simple instructions. (*Id*. at 428) But even assuming that the ALJ's second hypothetical adequately encompassed Ms. Wilson's limitations, the cryptic exchange he had with the vocational expert about whether the hypothetical individual can "make change" leaves questions as to whether the vocational expert testified that a person with the additional limitations could perform jobs available in the national economy. Accordingly, based on the current record, the Court cannot conclude the ALJ's error was harmless.